THE ATCHISON, TOPEKA & SANTA FE RAILWAY COM-
PANY V. GEORGE W. TOWNSEND.

No. 14,030. (81 Pac. 205.)

SYLLABUS BY THE COURT.

1. DAMAGES—*Husband May Recover for Wife's Death.* The surviving husband is, within the meaning of section 422 of the code, next of kin of his wife, and entitled to recover damages for her wrongful death.

2. RAILROADS—*Duty to Restore Highway.* It is the duty of a railroad company in constructing its road across a highway to restore the same to its former state, or to such a state as not necessarily to impair its usefulness. It may not be possible to restore the highway to its exact original condition, but it should be restored to its former state as far as it is practicable to do so, and so as not substantially to endanger or impair its usefulness as a highway.

3. —— *Instruction Not Misleading.* An instruction to the effect that it is the duty of the company to restore a highway, "as near as it was possible to do so, to its original condition" is not misleading when considered with other portions of the same instruction defining the duty of the company.

4. —— *Exemplary Damages Not Allowable.* The right of action for wrongfully causing death, given by section 422 of the code, is for the pecuniary loss sustained by the relatives of the deceased, and exemplary damages may not be allowed.

Error from Dickinson district court; JOSEPH T. DICKERSON, judge. Opinion filed June 10, 1905. Modified and affirmed.

*A. A. Hurd, O. J. Wood,* and *G. W. Hurd,* for plaintiff in error.

*Edward C. Little,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by George W. Townsend to recover damages from the Atchison, Topeka & Santa Fe Railway Company for the wrongful death of his wife, occasioned, as he alleged, by the

culpable negligence of the railway company.   On April 25, 1903, Mrs. Townsend drove a horse and buggy along a public highway, and when she reached a railroad-crossing she was struck by the locomotive of a passing train and killed.   The negligence charged against the railway company was the failure of those in charge of the train to give proper signals as they approached the highway, and also in making and maintaining a dangerous crossing.   It was averred and shown that a deep cut was made for the railroad at and near the crossing, the dirt from the excavation being piled high on each side of the track, and the highway was cut down in order to cross the railroad at grade.   The conditions were such that for a considerable distance a traveler on the highway could not see any part of an approaching train, and the cut was so deep and the obstructions so great as materially to deaden the sound of an approaching train.   The testimony tended to show that the intersecting cuts were so deep and narrow that it was impossible for Mrs. Townsend to have seen an approaching train until her horse was on and partially over the track.   These cuts and embankments remained as they had been originally made by the railroad company, and the highway had never been restored to its former safe condition for public travel.   The jury found that the whistle was not sounded or the bell rung by the trainmen as they approached the highway, and also that the company failed to provide a safe crossing.   Townsend recovered $3850, and $1000 of this amount was exemplary damages.

It is first contended that under section 422 of the code Townsend was not entitled to recover damages for the wrongful death of his wife.   It provides that "the damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the de-

ceased." It is insisted that a husband is not "next of kin" of his wife, and that kinship means relationship by blood, and not by marriage. The reference in the section itself to the statute of descents and distributions furnishes the rule for interpreting the phrase "next of kin." Under that statute the husband and wife inherit from each other, and it has already been held, in *Railway Co. v. Ryan,* 62 Kan. 682, 64 Pac. 603, that the phrase, as used in the statute for the recovery of damages for wrongfully causing a death, means kin that inherit from the deceased under the statute of descents and distributions. (See, also, *Steel, Adm'r, v. Kurtz et al.,* 28 Ohio St. 191; *The Lima Elec. L. and P. Co. v. Mattie Deubler, Adm'rx,* 7 Ohio C. C. 185; *Pinkham v. Blair,* 57 N. H. 226.)

Complaint is made of the admission of testimony that on other occasions no whistle or warning of the approach of trains at this crossing was heard. If the conditions at the crossing were such that the statutory or ordinary signals were insufficient, then other and more effective warnings should have been given. It was competent to show by witnesses that had made a test at the same place, and under substantially similar circumstances, how far the whistle or bell of trains could be heard, and the effect of the cut and obstructions in deadening the sounds of approaching trains. (*Mo. Pac. Rly. Co. v. Moffatt,* 56 Kan. 667, 44 Pac. 607.) Some of the testimony objected to was admissible for that purpose, and even if it had not been admissible for any purpose the objections that were made to the testimony were hardly sufficient to challenge the attention of the trial court.

In charging the jury the following instruction was given:

"You are instructed that whenever a railroad in this state is constructed across a highway it is the duty of the railroad company to restore the highway thus intersected to its former state or condition, or to such a

state and condition as not necessarily to impair its use-
fulness as a public highway. In other words, it was
the duty of the defendant company in this case, after
having crossed the highway in question, to restore said
highway, as near as it was possible to do so, to its
original condition, and this with special reference to
its use as a public highway, now burdened with the
additional dangers of being crossed by said railroad
company. Therefore, I instruct you that if you find
from the preponderance of the evidence that the de-
fendant railroad company failed and neglected to re-
store the highway in question to its original condition
of safety, as far as it was possible for the defendant
railroad company to do so, and that said crossing was
left by said defendant company in such a condition as
to impair its usefulness as a public highway, and per-
mitted by said defendant to remain in a dangerous
condition, then the defendant company was guilty of
negligence."

It is contended that the statement that the company
should restore the highway as near as possible to its
original condition prescribed a higher standard of duty
than the law requires. The statute provides:

"Every railway corporation shall have power
. . . to construct its road across . . . any
. . . highway, . . . but the company shall
restore the . . . highway thus intersected or
touched to its former state, or to such state as to have
not necessarily impaired its usefulness." (Gen. Stat.
1901, § 1316.)

The construction of a railroad over a highway
makes it practically impossible to restore the highway
to its former condition, but it should be restored to its
former state of safety for public travel. It may not
be important or necessary that it should be brought as
nearly as possible to its original condition, but it is
important that it should be restored so that the danger
of its use would be reduced as much as possible. A
more apt and better expression might have been that
the highway should have been restored to its former
state so far as it was practicable to do so, or that it

should have been restored so as not substantially to impair or endanger its usefulness as a highway. The first part of the instruction complained of is unexceptional, and when the entire instruction is considered it does not seem that the jury could have been misled by the words "as near as possible." Taken in its entirety, it said, in effect, that the railway company should do everything that was reasonable and practicable to restore the highway to its former state, so that its use for public travel should not be endangered. The inclination of the courts is strictly to enforce the law as to the care to be exercised by both railroad companies and travelers at highway crossings.

The court advised the jury that punitive damages might be allowed in the case if the jury found that the company was guilty of negligence of a gross, reckless and wilful character, and the findings disclose that such damages were awarded to the extent of $1000. Assuming that the negligence was gross and wanton, it is the opinion of the court that exemplary damages may not be allowed in such cases. Recoveries for wrongful death could not be had under the common law. The right to maintain such actions is given by statute, and damages can only be recovered to the extent that the statute allows. There is a division of judicial opinion on the subject of the allowance of exemplary damages for injuries resulting in death, but at page 363 of volume 13 of the Cyclopedia of Law and Procedure, where the cases are collected, it is said:

"The rule is well established that under statutes giving a right of action for death by wrongful act, exemplary or punitive damages cannot be recovered unless expressly provided for in the statute giving the right of action."

Our statute provides:

"When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor

against the latter, if the former might have maintained an action had he lived against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased." (Civil Code, § 422; Gen. Stat. 1901, § 4871.)

It will be observed that no reference is made to damages by way of punishment, and the limitation placed upon the amount of recovery is somewhat inconsistent with the allowance of exemplary damages. No more than $10,000 can be recovered for the wrongful death of any person, and, if the pecuniary loss of the plaintiff equaled that sum, and that amount was awarded, of course no exemplary damages could be given.

The precise point, although considered in a number of cases, has not been expressly decided. The question was suggested in *K. P. Rly. Co. v. Cutter,* 19 Kan. 83, but the court, finding it unnecessary for the determination of the case, expressly declined to decide it. The character of the damages recoverable in this class of cases was considered in *A. T. & S. F. Rld. Co. v. Brown, Adm'r,* 26 Kan. 443, 458, where it was said:

"We cannot agree that the theory of the law is to punish for the mere negligent destruction of life; and the law of compensation means that no more should be given to the next of kin than they probably would receive from the decedent if his life had not been taken away."

In the case of *Coal Co. v. Limb,* 47 Kan. 469, 471, 28 Pac. 181, it was said:

"This is an action for compensation only, and no damages can be recovered by the plaintiff below except for the pecuniary loss which the parent sustained by the death of the son."

34—71 KAN.

In the case of *U. P. Rly. Co. v. Sternberg*, 54 Kan. 410, 418, 38 Pac. 486, it was remarked:

"As the jury were informed, the law must give the child only the amount of his pecuniary loss. Nothing is allowed for the suffering of the deceased nor for the sorrow of those he left, but just the value to the child of his life, in money."

In *Railway Co. v. Ryan*, 62 Kan. 682, 687, 64 Pac. 604, the nature of the action was under discussion, and it was said:

"An action of the character of this one is purely compensatory. It is brought to recover for pecuniary loss consequent upon the death."

Although the allowance of exemplary damages was not directly drawn in question in the cases cited, the view taken by the court as to the nature of the action indicates quite clearly that nothing can be allowed by way of *solatium* or as punishment.

In most of the states the courts have declined to allow exemplary damages. For instance, they have been rejected in Minnesota, Oregon, Indiana, New York, Michigan, South Carolina, Wisconsin, Iowa, Georgia, Pennsylvania, Illinois, North Dakota, South Dakota, California, Maine, Washington, Texas, Colorado, Alabama, and Ohio. Such damages have been allowed in the states of Connecticut, Colorado (under an early statute), Alabama (under a "homicide act"), Kentucky, Virginia, West Virginia, Tennessee, Missouri, Washington, Texas, and South Carolina. Exemplary damages were allowed in Colorado under a statute giving damages in general terms, but on a slight modification of the statute the court refused to allow exemplary damages. (*Moffatt v. Tenney*, 17 Colo. 189, 30 Pac. 348.) In the state of Alabama, under "An act to prevent homicides," the damages recoverable were treated as entirely punitive, and hence exemplary damages were awarded; but under the "employers' act," giving damages for the injuries resulting from

the death of employees, it was held that exemplary damages could not be recovered. (*Louisville & Nashville Railroad Co. v. Orr,* 91 Ala. 548, 8 South. 360; *Louisville & Nashville Railroad Co. v. Trammell,* 93 id. 350, 9 South. 870.)

In Kentucky, one of the states in which such damages are allowed, it is expressly provided in the statute that punitive damages may be recovered. The same is true of Washington and New Mexico. In Texas, under a statute providing in general terms that damages might be allowed, exemplary damages were refused, but under a recent constitutional provision exemplary damages are expressly authorized. Under a general statute of South Carolina the courts declined to allow exemplary damages (*Garrick v. Railroad Company,* 53 S. C. 448, 31 S. E. 334, 69 Am. St. Rep. 874; *Nohrden v. Railroad Company,* 54 id. 492, 32 S. E. 524) ; but the legislature of that state recently amended the law so as to authorize exemplary damages. In the states of California and South Dakota exemplary damages were expressly given by statute, but since that time the statutes have been changed, eliminating that kind of damages. (*Lange v. Schoettler,* 115 Cal. 388, 47 Pac. 139; *Smith v. Chi. M. & St. P. Ry. Co.,* 6 S. Dak. 583, 62 N. W. 967, 28 L. R. A. 573.) Washington is classed among the states which allow exemplary damages, and while the statutory provision that "damages, pecuniary or exemplary, as under all circumstances of the case may to them seem just," are permitted, yet the court held, in *Walker v. McNeill,* 17 Wash. 582, 50 Pac. 518, that the recovery was limited to pecuniary damages. In the early case of *The Spokane Truck and Dray Co. v. Hoefer,* 2 Wash. 45, 25 Pac. 1072, 11 L. R. A. 689, 26 Am. St. Rep. 842, the doctrine of exemplary damages was held to be unsound in principle. Under a section of a statute of that state providing that the father may maintain an action for the injury or death of a child it was

held that exemplary damages could not be recovered. (*Atrops v. Costello*, 8 Wash. 149, 35 Pac. 620.)

It thus appears that, with a few exceptions, exemplary damages are not allowed unless expressly provided for by constitution or statute. In some courts the holding is based to some extent upon the peculiar language of the statute giving damages, but generally it is placed on the nature of this new statutory right of action. Until the statute was passed no one could recover for the death of a relative. The first statute, known as Lord Campbell's act, was the pattern upon which the American statutes were framed. It was early decided in England that the relatives of the deceased could not claim any damages that might have been claimed by the person injured if death had not resulted, but could only obtain compensation for the pecuniary loss which they sustained in his death. This theory, it was held, excluded damages for the pain and suffering of the deceased, or for the mental anguish or distress of his relatives, or for the loss to them of the society of the deceased, and, the damages being simply compensatory, they necessarily excluded punitive damages. In adopting the statute most of the jurisdictions have adopted the interpretation which the courts had given to it, and from the earliest cases this court has held that the damages recoverable are for the pecuniary loss sustained by the next of kin of the deceased. This theory necessarily excludes any award as *solatium* for the next of kin, or as punishment for the defendant.

It follows that the judgment must be modified by striking out the award for exemplary damages, and in all other respects it is affirmed.

All the Justices concurring.