RUBEN ROCHESTER et ux., *Appellees*, v. THE WELLS, FARGO & COMPANY EXPRESS, *Appellant.*

No. 17,637.

SYLLABUS BY THE COURT.

1. WRONGFUL DEATH IN MISSOURI—*Compensatory Damages Recoverable in Kansas.* Our statute (Civ. Code, § 419) permits the recovery of compensatory damages only for death by wrongful act. Certain sections of the Missouri statute permit such recovery—also punitive damages, but only when wanton negligence is alleged and shown. A Missouri plaintiff brought an action in Kansas, based on these sections of the Missouri statute, to recover compensatory damages only. *Held*, that such action can be maintained.

2. PLEADINGS—*Compensatory Damages—Punitive Damages.* The plaintiff by his pleading having waived any claim for exemplary damages, his action is substantially the same as one under our statute, and its maintenance here is not opposed to our laws or public policy or to good morals or the interests of our citizens, and upon the principles of comity should be permitted.

3. ———— *Same.* Section 47 of the civil code merely prescribes the persons who may sue, and does not enlarge the cause of action itself.

4. ———— *Same.* While the prayer is no part of the petition and does not limit or measure the right of recovery, still it may be considered in determining the relief actually sought by the pleader.

5. ———— *Same.* When by his pleading a plaintiff indicates his intention to recover compensatory damages only, the court will not regard his action as one for punitive damages also.

Appeal from Wyandotte district court. Opinion filed May 11, 1912. Affirmed.

*Lathrop, Morrow, Fox & Moore,* and *McCabe Moore,* for the appellant.

*I. J. Ringolsky, Edwin S. McAnany,* and *Maurice L. Alden,* for the appellees; *Henry L. Alden,* of counsel.

The opinion of the court was delivered by

WEST, J.: Sections 2865 and 2866 of the Revised Statutes of Missouri of 1899 were as follows:

"Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured.

"All damages accruing under the last preceding section shall be sued for and recovered by the same parties and in the same manner as provided in section 2864, and in every such action the jury may give such damages, not exceeding five thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default."

The plaintiffs, who lived in Kansas City, Mo., filed their petition in the district court of Wyandotte county, Kansas, pleading these sections and alleging that their minor son, past eight years of age, was, on or about September 17, 1909, standing and playing near the curb on the east side of Oak street between Seventeenth and Eighteenth streets in Kansas City, Mo., when a team of horses drawing a heavy express wagon owned by and in charge of the defendant's agent and servant violently collided with and ran over the boy, injuring him so that he died the next day. The petition alleged that the negligence consisted:

"3rd. In driving said wagon at a high and reckless rate of speed in a southerly direction, down grade on the east or left side of said street into and near a large number of men, women and children, when the defendant, through its said agent and employe, Robert Bybee, was, or in the exercise of reasonable diligence could have seen where said children were standing and play-

ing on and near the street, and were running to and fro, and when said children, particularly plaintiff's child, were by such driving in imminent peril of being struck and injured by said team and wagon.

"4th. In driving said team and wagon through and near said crowd of children and others, without first stopping or giving warning of their approach, when said driver knew, or in the exercise of reasonable care and caution should have known that said Abraham Rochester was in a place of imminent peril in the street and in danger of being struck while being engaged in such a manner that he did not and could not see the approach of said team and wagon."

It also alleged:

"10. That Abraham Rochester would have been nine years of age in December, 1909, had he lived; at the time of his death he was a strong, healthy and able-bodied child of much assistance, support and comfort to the plaintiffs; that the services and earnings of the said Abraham Rochester, and the assistance he would have rendered the plaintiffs, had he lived, would have been more than ten thousand dollars ($10,000.00) until he would have arrived at the age of 21 years, and would have been worth more thereafter. That by the death of said Abraham Rochester, plaintiffs have been deprived of his services, assistance, support, society, comfort and maintenance; that by reason of the foregoing facts, plaintiffs have been damaged in the sum of ten thousand dollars ($10,000.00).

"Wherefore, plaintiffs pray judgment against defendant for five thousand dollars ($5,000.00) and for costs."

The defendant demurred to this petition, the demurrer was overruled, and a trial was had resulting in a verdict for the plaintiffs for $3000. The defendant appeals and asserts that the court erred in overruling its demurrer for the reason that the action was brought upon a penalty statute essentially different from the statute of Kansas authorizing recovery for death caused by wrongful act and that such action can not be maintained in our courts. The plaintiffs contend that as the action was in effect brought for compensatory

damages only it may be maintained here, and that so far as the statute authorizes recovery for actual damages it is practically like our own. The defendant argues that an action based on the sections in question is for punitive as well as compensatory damages, and. if the statute be made the basis of an action in another state it must be regarded as a whole and not as one for compensation aside from its penal features.

Section 419 of our civil code is substantially a reënactment of Lord Campbell's Act (86 Statutes at Large [Eng.], ch. 93, p. 531) and under it the action is for the pecuniary loss sustained, and exemplary damages are not allowable (*Railway Co. v. Townsend,* 71 Kan. 524, 81 Pac. 205, and cases cited).

It will be seen that under the sections in question the amount of damages to be recovered is largely discretionary with the jury, who are expressly authorized to regard the mitigating or aggravating circumstances. It is manifest therefore that the statutes themselves provide for something more than compensation and in that respect differ from our statute. In *Parsons v. The Mo. Pac. Ry. Co.,* 94 Mo. 286, 6 S. W. 464, it was held that exemplary damages could not be recovered unless the wrongful act was accompanied by aggravating circumstances. There the minor lacked but thirty-two months of his majority, and the court said that by no possibility could the actual damages have been more than $1800, and yet the jury returned a verdict for $5000. As there were no aggravating circumstances this was held excessive and set aside. The inevitable inference, however, is that had the aggravating circumstances been sufficient $3200 of the verdict based thereon would have been upheld, showing conclusively that punitive as well as actual damages may be recovered. As said in *Haehl v. The Wabash R'y Co.,* 119 Mo. 325, 24 S. W. 737:

"It needs no argument to show that under this law, in a proper case, exemplary damages may be given. It has been so held, or assumed as a self-evident propo-

sition in every case in which the attention of this court has been called to the subject, ever since the law was first enacted in 1855." (p. 341.)

It is asserted by the defendant and denied by the plaintiffs that the petition would justify a verdict for exemplary damages. In *Otto Kuehne Preserving Co. v. Allen,* 148 Fed. 666, the court of appeals of the eighth circuit held that section 2866 of the Revised Statutes of Missouri of 1899 allows such damages.

"To authorize the recovery of exemplary damages under such statute, the defendant must have acted maliciously or wantonly, or have been guilty of negligence so gross as to evince a conscious disregard of the rights of others, and the complaint must allege such facts." (Headnote, ¶ 2.)

In that case the petition charged gross and wanton negligence in express terms, without setting out the facts which constituted such negligence, and it was held that this was insufficient. The Missouri decisions were reviewed and followed. Section 594 of the Revised Statutes of Missouri of 1899 was also quoted, providing that:

"In all actions where exemplary or punitive damages are recoverable the petition shall state separately the amount of such damages sought to be recovered." (p. 671.)

It was also remarked that there was no substantial evidence fairly tending to show wanton, willful or malicious conduct, and that the complaint was framed strictly upon the theory of compensatory damages.

In the petition now under consideration the allegations of negligence are probably a sufficient basis for proof of vindictive damages, but the closing paragraph indicates an intention on the part of the pleader, as does the prayer itself, to recover only actual damages, and when the pleader so shapes his petition as to indicate this intention the court would hardly enlarge his claims by regarding his pleading or by instructing the

jury as in a case plainly calling for punitive damages. While the prayer is no part of the petition, and in no wise the measure of relief which the court may grant (*Smith v. Kimball,* 36 Kan. 474, 13 Pac. 801; *Walker v. Fleming,* 37 Kan. 171, 14 Pac. 470; *Smith v. Smith,* 67 Kan. 841, 73 Pac. 56), still it may be considered as indicating the intention of the pleader (31 Cyc. 83). It seems also that before this action was begun the statute had been amended so that the maximum recovery was $10,000 instead of $5000, and yet, although alleging $10,000 damages, the plaintiffs asked for only $5000, and used no language characterizing the conduct of the defendant as wanton or malicious. Parties are usually not backward about making their claims large enough, and when the plaintiffs, represented by competent counsel, plainly indicate the extent of relief they desire it is not the policy of the law to grant them more.

Construing the action, therefore, as one for compensatory damages only, the remaining and vital question is whether it can be maintained in the courts of this state. The Missouri supreme court has held that a statute creating a liability which did not exist at common law, and prescribing the person who shall have the right to enforce it, can be enforced only by the person so prescribed, and that the statute of Missouri (Rev. Stat. Mo. 1899, § 548), providing that whenever a cause of action has accrued under the laws of another state, and the persons entitled to the benefit are not entitled by the laws of such state to prosecute the action in their own name, it may be brought in Missouri by a person appointed by the court for that purpose, was void for the reason that no state has the power to create a liability for an act done beyond its territorial limits (*McGinnis v. Missouri Car & Foundry Co.,* 174 Mo. 225, 73 S. W. 586). It was there said:

"Our statute attempts to enforce the liability created by the statute of Illinois, not through the person who alone is given the right under the Illinois law to enforce it, but through a person who would have no right

to enforce the liability in that state. . . . As pointed out, it takes both paragraphs of the Illinois law to support the action in that state, and it is incongruous to say that a vital, component part can be segregated from the entity of which it is a necessary part, and be transplanted into the laws of another state, while the entity is incapable of being so transplanted or enforced. Nor can such a component part be transplanted and be grafted onto or supplemented by a law of such other state, so as to make the two parts, dependent for their existence upon separate sovereign wills, a complete and valid law." (pp. 233, 234.)

In *Newland v. Railroad*, 222 Mo. 375, 121 S. W. 125, it was ruled that an action could not be maintained in Missouri for an injury arising in Kansas from the failure of a railroad company to block its switches, the Missouri statute requiring such blocking but the Kansas statute making no such requirement. In the opinion the court said that comity in a legal sense must be courtesy in fact as well as in name. The court further said:

"In administering the substantive laws of a sister state, we administer *them*, not our own; and we should not administer them either more or less blandly than do our sister's courts. This in order, on the one hand, to not refuse jurisdiction by a too sour or cold complexion or to repel it by corroding our sister's law; or, on the other hand, to not *toll, entice and coax* jurisdiction from our sister's courts—thereby (under a mask of courtesy) draining jurisdiction away from them by an enlarged and alluring interpretation in our own." (p. 392.)

In *Dennick v. Railroad Co.*, 103 U. S. 11, it was decided that a right imposed by the statute of a state may, when transitory, be asserted and enforced in any circuit court of the United States having jurisdiction of the subject matter and the parties. Mr. Justice Miller in the opinion said:

"It is indeed a right dependent solely on the statute of the state; but when the act is done for which the law says the person shall be liable, and the action by

Rochester v. Express Co.

which the remedy is to be enforced is a personal and
not a real action, and is of that character which the
law recognizes as transitory and not local, we can not
see why the defendant may not be held liable in any
court to whose jurisdiction he can be subjected by per-
sonal process or by voluntary appearance, as was the
case here.

"It is difficult to understand how the nature of the
remedy, or the jurisdiction of the courts to enforce it,
is in any manner dependent on the question whether it
is a statutory right or a common-law right.

"Wherever, by either the common law or the statute
law of a state, a right of action has become fixed and a
legal liability incurred, that liability may be enforced
and the right of action pursued in any court which has
jurisdiction of such matters and can obtain jurisdiction
of the parties." (p. 17.)

This decision was approved and followed in *Texas &
Pacific Railway Co. v. Cox,* 145 U. S. 593, holding that:

"The rule thus stated is generally recognized and ap-
plied where the statute of the State in which the cause
of action arose is not in substance inconsistent with the
statutes or public policy of the State in which the right
of action is sought to be enforced." (p. 605.)

A leading case is *Higgins v. Central New Eng. &c.
Railroad,* 155 Mass. 176, 29 N. E. 534, deciding that an
administrator appointed in Massachusetts could main-
tain an action for the wrongful death of his intestate
in Connecticut, although the incidents of the recovery
differed from those of an action brought in Connecti-
cut. It was said that the principles of comity required
that in cases other than penal actions the foreign law,
if not contrary to public policy, abstract justice or pure
morals, or calculated to injure the state or its citizens,
should be recognized and enforced. It was pointed out
that the statutes of the two states differed somewhat,
that of Connecticut deducting the costs and expenses of
suit before distributing the damages, and also allowed
exemplary and vindictive damages, and it was said:

"If, in the action prosecuted here, neither the ex-
penses of the suit nor exemplary nor vindictive dam-

ages can be recovered, that fact is no hardship upon the defendant. There is no reason why the plaintiff may not be allowed to waive those elements of damage, by bringing his action in a forum where they can not be allowed." (p. 181.)

The precise question has not been before this court, but one somewhat similar has received consideration. In *Dale v. Railroad Co.*, 57 Kan. 601, 47 Pac. 521, it was held that a statute of New Mexico providing that for death by wrongful act the party should "forfeit and pay for every person or passenger so dying the sum of $5000" (p. 602), being penal in its nature, could not be enforced in our courts; that the law of Kansas being strictly compensatory and that of New Mexico strictly penal, if we should attempt to enforce the latter to the extent of which it was compensatory only "we should find ourselves in the position of having to resort to that statute to create the liability, and then measure that liability by the principles obtaining in this state. . . . Under the authorities, the obstacles in the way of affording the plaintiffs any relief in this case appear insurmountable; and we feel constrained to hold that the courts of this state will not undertake the enforcement of a statute penal in part, and so dissimilar in principle from the law of our own state." (p. 607.)

*Matheson v. Railroad Co.*, 61 Kan. 667, 60 Pac. 747, held that the Missouri statute (Mo. Rev. Stat. 1899, § 2864) providing for a penalty could not be enforced here. It was there said:

"Upon the grounds of comity, a cause of action arising in one state under a statute may be asserted in another where the latter gives the same right of action, and there is a substantial similarity in the statutes of the two states. If the Missouri statute is penal in its nature, and the right of recovery given by it is inconsistent with the policy and laws of this state, the action is not maintainable, and the decision of that question is controlled by former adjudications of this court. . . . It is true that it is not necessary that the statutes of the two states should be exactly alike, but there

must be a substantial similarity.  As will be observed, there is an essential difference as to who may bring the action and may constitute the beneficiaries of the penalty awarded." (pp. 668, 670.)

In *Swisher v. Railway Co.*, 76 Kan. 97, 90 Pac. 812, it was held that a cause of action not existing at common law but created by a statute of another state when presented to the courts of this state for enforcement will be held to ·consist not merely of the right given but also of all the. conditions and limitations attached thereto by the statute where it was created.  The action was brought under the New Mexico statute giving a cause of action in favor of certain relatives of persons whose death might be caused by the wrongful act of another, requiring a certain notice to be served within ninety days as a condition precedent, and it was held that such notice was an essential part of the right given.  It was said:

"It does not seem reasonable that a cause of action created by the law of one state should be materially enlarged when the beneficiary moves across the state line and appeals to the courts of another state to enforce his imported right.  The rule of the state comity does not contemplate such a result." (p. 102.)

It is argued by the plaintiffs that section 47 of the civil code permits the maintenance of this action here. It reads:

"Whenever a cause of action has accrued under or by virtue of the laws of any other state or territory, such cause of action may be sued upon in any of the courts of this state, by the person or persons who are authorized to bring and maintain an action thereon in the state or territory where the same arose."

The evident purpose of this statute, however, is to extend to litigants from another state the mere personal right to sue which is granted them by the sister state and not to enlarge or change the cause of action.  As said in *Bershears v. Nelson*, 80 Kan. 194, 101 Pac. 1011: "It was intended to enlarge, and not to restrict,

the right to bring actions in this state" (p. 195), but it was not intended to enlarge the causes of action themselves.

One thing is perfectly plain. Under the statute in question it would be possible for a plaintiff in Missouri to recover a mere pittance as actual damages and a verdict for thousands of dollars as punitive damages, which can not be done in this state. It is equally plain that in Missouri a plaintiff might recover actual damages only, and that unless his allegations and proof were such as to warrant it he could not recover anything by way of exemplary damages. When, therefore, he comes with the latter kind of a case to a court of this state he is in reality asking only the same relief which he might obtain in the courts of his own state, and no reason is apparent why upon ordinary principles of comity our courts should not extend to him the right to maintain such an action. Were he suing here for all that he might ask in Missouri our courts could not grant him the relief sought; but when he comes here in the same attitude in which a party would come if the statute authorized compensatory damages only, we see no reason why he may not, with as much justice and consistency, maintain his action as if the statute made no provision for other than actual damages. The difference in principle between the Kansas and Missouri statutes is that the one makes the recovery of punitive damages impossible and the other makes such recovery possible only when the allegations and proof are such as to show wanton negligence. By entertaining a cause of action in which the plaintiffs seek only to recover actual damages we are not violating any principle or policy of our own law but are simply permitting a citizen of a sister state to proceed along the line upon which, for the purposes of this case, the policy of the two states is identical.

We are constrained to hold, therefore, that the demurrer was properly overruled and the ruling is affirmed.